United States v. Bombino-Persico. May it please the court, if I say there's a large gray animal in the corner with tusks, a trunk, and big floppy ears, I don't need to square the circle by spelling out elephant. So too here, where the government told probation and the sentencing court it could prove Michael Persico's participation in unconvicted murders, the ultimate crime, by preponderant evidence. That is not presenting relevant information, commonly defined as, quote, factual data. What about the provision in the plea agreement which says that the government, wouldn't I Department of Information, relevant to sentencing, including criminal activity engaged by the defendant. Exactly where I'm going right now, Your Honor. That is not presenting relevant information, commonly defined as factual data. It is vouching for the information as credible and reliable Where does the provision say what you just said? Factual. What was the phrase? That's from the dictionary. That's from the dictionary. But the language in the agreement says, advise the court and the probation department of information relevant to sentencing, including criminal activity engaged by the defendant. Had the government simply said, and we suggest that this is not at all necessary, that the defendant was charged in the indictment with crimes X, Y, and Z, and those charges were dismissed per this plea bargain, that would be presenting the court with relevant information. Not what happened here. So you're saying that the government, once when probation is engaged in the process of putting together its pre-sentencing report, and they reach out to government for information they have here, you're saying that all that the government should provide them is what is charged, and all other conduct, perhaps uncharged conduct, the government has an obligation to withhold because of this plea agreement? Yes. Absolutely. And the reason I say that is a Why then in the plea agreement does this come up? The plea agreement explicitly says that the government is to take no position where within the stipulated guidelines range of 37 to 46 months the sentence should fall, and it shall make no motion for an upward departure, Judge. And when you say Neither of those happened, did they? Well sure it did. What was the range within the guideline range that the government recommended? Judge, when you say we can prove that this defendant was involved in the worst of crimes by preponderant evidence To prevent the government from advocating for a sentence that corresponded to the defendant's conduct. In fact, your client's lawyer at trial tried to get that in during the plea You know, she said, you know, my understanding is that the government's not going to advocate in any way to the probation office or to the court for a sentence above the guideline range or where within the guideline range it should fall. And that was not correct. That's not what the agreement said. And the prosecutor said, I'm not going to modify verbally any part of this agreement. The agreement stands for itself. Now you're trying to get, make the argument that somehow what was refused by the government at the time of the plea is a nullity and you can make this argument. I don't see it. I'm saying that, Judge, my co-counsel's statement at sentencing sheds light on the party's understanding of the agreement. But the court doesn't need to consider those statements at all to resolve this It was expressly rejected by the government as part of the agreement. You don't need to go beyond Well, her understanding was not, not, um, was not, was not part of the agreement. You don't need to go beyond the four corners of the agreement to read that A, the government shall take no position as to where within the stipulated guidelines range the sentence will fall and B, the government shall not seek an upward departure. Now these agreements are interpreted like statutes according to very well settled, very familiar background principles Now, now, but when you, you get to the, to the bottom of it, uh, the government at all times, uh, adhere to what it said it would do and that is to seek a sentence within the guidelines recommended range It did not. It paid lip service to that principle while running roughshod over it because Let me, let me see if I could break this down to constituent parts because as I understand your argument about where, how the government breached the agreement, it seems to me, and you correct me if I'm wrong, that it boils down to three things. First, in terms of the information provided to probation. Second, in terms of the FATA coherent and third, perhaps in comments that were made doing the actual sentencing. Is that, does that, does that summarize the three? Is there, is there a fourth cat, fourth or fifth category I'm missing? In part, it's spelled out at pages 21 through 28 of the reply briefs. There are various written submissions in the interim that we contend either breached on their own or exacerbated the original breach, but make no mistake what So that would fall into the, in essence, the third category. I'll broaden the third category. So it's basically submissions relating to the sentencing. So we've got information provided probation, we've got the FATA coherent, and then we've got submissions related to the sentencing. Let me sort of, now starting with the first category, probation, there's a, there is a second circuit case, U.S. v. Williamsburg Check Cash Incorporation, where the court basically says that even if the government agrees to make a recommendation as to sentencing, we hold that it's, I'll quote, we hold that it may still provide the probation department with any factual material relevant to sentence, sentencing, which of course includes what it may know of, of appellant's other activities. So, so there's a, so tell me, accepting that that's a clear second circuit law from, from this court, tell me how what they provide probation falls outside of the parameters of the plea agreement, one, and what the second circuit has already held in this Williamsburg. A, it falls outside the parameters of the plea agreement because the plea agreement's specific provisions trump its general language about providing relevant information. B, there's no conflict. But it doesn't trump, I mean, and I think the import of the decision in our court, this court's decision in Williamsburg Check Cash Incorporation, is that whatever is in the plea agreement, and in the context of the plea colloquy, I'm, I'm assuming, and I, from the record it seems that Mr. Percival was told, that the, the, the court's not bound by what the parties agreed to in the plea agreement, correct? Oh, but the government is bound, and... No, the government is bound, but the court, and so in essence, the probation is acting as an agent of the court. So probation wants information, why would the, the government certainly would have to provide that information? They're allowed to provide information. What they are not allowed to do, where they cross the line into prohibited advocacy, where they breach both the letter and spirit of the agreement, is to say, we can prove it by a preponderance of the evidence. That is not... So, so what should they have said? So they, so they, let me just be clear, so they could have provided the information about this uncharged conduct, but you're saying they couldn't advocate that they could prove the uncharged conduct? That's correct. That's exactly correct. So we have, so the government's supposed to say, well, we've got this, what the person has pled to, but we have this other uncharged conduct, but we can't say anything more about it because of the plea agreement. That's right. And so, and if probation comes back and says, well, we need to know more, because the judge, the sentencing judge, under 18 U.S.C. 3553A, has an obligation to consider all of these factors. So you're saying the government then would stonewall probation? Not stonewall. We bargained our way, our right to advocate for that, and we cannot argue that we can prove it by a preponderance of the evidence. First of all, the court doesn't want that. Perhaps they, what if they didn't use the words, they argue, but what if they, they simply said, probation says, I'm not asking you to argue one way or the other. I'm asking you to give me the information that you have. The judge will evaluate it. Could the government have done that? Yes. They didn't do that. They didn't do that. They goaded the judges, both judges, into ordering a FATICO hearing by expressly stating they can prove it beyond, by a preponderance of the evidence. They vouched for their credibility thereby of their cooperating witness, the sole source of the information. And they said they made a representation as officers of the court, contrary to the plea agreement. They are saying, in essence, we believe this person. He's credible. He's reliable. You should rely on him, and you should bump up the defendant's sentence. Now, this is, none of this- In the last part, they didn't quite say that. They didn't say that, but this is not how plea agreements are interpreted. This is one area of the law where, for once, we get the benefit of the doubt. I suggest to the court that there's no ambiguity here. They are allowed to, I don't know why they had to say it. The court knows that a grand jury has found this conduct by probable cause, and there's probable cause for it. They can just point to the indictment if they have to do anything at all or do nothing. It's already before the court. The relevant information is already before the court. What's not before the court, where you gild the lily, even if they think they can prove it by preponderant evidence, why would we enter into this deal when, as is spelled out in the affidavits, and as is, uncontroverted affidavits? No, he entered into the deal because it was a five-year maximum. And Michael Persico, per uncontroverted affidavits for this lawyer right here, and Paul Schechtman, his co-counsel, said Michael Persico expressly rejected, over and over and over again, a five-year deal. We bargained for X, we got Y. Now the rule- You got your bargain, which is that the range- No, we didn't. But what you couldn't bargain for, what you didn't bargain for, and what you couldn't bargain for, is requiring the sentencing judge to sentence within that range, correct? If she had done that, what we bargained for was the government not to advocate for something above the stipulated range, or, and to take no position anywhere. Where did the government say you have to go above the range in order to appropriately sentence this guy? Judge, your position with respect amounts to, don't look over there, don't throw me in the briar patch, and we can end-run the agreement's specific provisions, its letter in spirit, by winks and nods. That's why I started with the elephant. I don't have to say elephant. This is why the prosecutor, I go back to my earlier comments, this is why the prosecutor refused to accept your, Persico's counsel's statement at the time of the plea, because she knew that the government might do this. And the government said we're free to do it, effectively, because we're going to take the agreement and hold it strictly to its terms. You do not have to go beyond the four corners of the agreement and the well-established, settled, familiar plea background principles of interpreting plea agreements for us to win this appeal. That statement is further circumstantial support. I don't need it, respectfully, to win here. We get the benefit of the doubt. There's no ambiguity. I just harmonized the two principles. Presenting information is pointing to the indictment. He was charged with this. It was dismissed per the plea bargain. That harmonizes any conflict in the plea agreement. That gives them the right to present information on the one hand, and it holds them to their promise not to advocate for any sentence within, any specific sentence within the 37 to 46 month range, meaning the high point, or anything above the guidelines. It's very easy to reconcile this agreement, and we get the benefit of the doubt. These agreements . . . Thank you. Thank you. You'll have some time for rebuttal, I believe. Two minutes. Okay. May it please the Court, my name is Elon Lifshitz. I represent the government in this case. The district court's judgment should be affirmed because the government never breached the Guilty plea was sufficient. We never breached the plea agreement because, as I think the questions allude to, we never agreed, in writing or otherwise, to withhold any information from the probation department or the district court that imposed sentence in this case. There's no provision, specific or general, in the plea agreement to that effect. That's what Judge Towns found twice, and she was correct. All we agreed to do was not to seek a specific sentence within the guidelines range or above it, and we adhered to that from the first day after the Guilty plea. The agreement, in fact, affirmatively stated that we could provide relevant information to the sentencing court, as I believe the panel identified. In support of your argument, you cite United States, quote, in the event that the probation department or the court contemplates any guidelines, adjustments, departures, or calculations different from those stipulated to in the agreement the parties reserve the right to answer any inquiries and to make all appropriate arguments concerning the same. Now, the plea agreement of Mr. Persico doesn't make the same, doesn't have the same provision, does it? With respect to guidelines adjustments contemplated by the court or probation department? Yeah. There's no provision, there's no wording like that in the plea agreement. This case didn't involve any adjustment to the guidelines range that was stipulated to in the plea agreement and the court. It also said in the event that the probation department or the court, and was the, did the Persico agreement say the I'm sorry, with respect to adjustments to the guidelines range? Yeah. I don't believe our plea agreement refers to adjustments to the guidelines range. It says more generally that we can provide information relevant to sentencing to the probation department and the court. To the extent that distinction matters to your honor, I would note that in this case, the guidelines range was stipulated to in the plea agreement and orally at the time of plea and the probation department and the court found the range that the parties had agreed would apply in this case. But it sounds as if, as I understand Mr. Prentice's argument and what the concern is, is that I think everyone knew that there was going to be uncharged conduct that was sort of hanging out there that possibly could have a considerable effect on the sentence. The plea agreement doesn't really sort of address how that issue is going to be dealt with and I think that it seems that it led to two different assumptions about how the issue should be addressed with the defendant assuming that nothing would come, you wouldn't help out probation any more than you absolutely needed to and they would narrowly define absolutely need to. You wouldn't have a fatical hearing and you wouldn't have any comments that would suggest this uncharged conduct should affect the sentencing. Because once you begin considering the uncharged conduct, it leads to arguments that allows the sentence, allows for some sort of upward departure and they interpret that as a breach. But the agreement really didn't sort of address or deal with that or the parties basically said this is as far as we're going to go. And perhaps, as Mr. Prentice argues, perhaps that's, you know, well, in the context of a plea agreement and the understandings that are there, you made an agreement that you really couldn't live up to in that sense. I would not agree with that conclusion, Your Honor. I think the agreement did address the You knew that probation was going to, I mean, in essence, and I think part of what they seem to be saying, I think the defendant is saying, is that in essence, they thought by having this language that the government would remain neutral. And I think the government understood its obligations. If probation comes to us and asks us for information, we're going to have to give them what we know about the uncharged conduct. If the court then has the uncharged conduct, the court's likely to ask for a fatical hearing and we're going to have to participate in that. And all of that information is then going to come out. And so then that's what, I think that's what they're, the defendant's thinking, gosh, you didn't live up to it because I thought all of this information was not going to come in. Now it's all in. I would resist believing that they actually believed that none of it would come in. I don't credit that at all. I don't think the post-plea affidavits should come into the record one way or the other. This brings me back to this thing I keep harping on, which is the colloquy between Ms. Kedia and the prosecutor. Was that you? Were you the prosecutor? I wasn't the one who spoke. I was present. It was my colleague. Whoever it was that spoke about trying to get a gloss on the agreement at that time. That would prohibit the government from making any advocacy. And they didn't get it. Exactly. They tried to expand the agreement. The reason we have written agreements, as my colleague observed, is so there's no ambiguity. In this case, the written agreement is not specific or general that we've breached other than references to the spirit of the agreement. And I submit we have not breached the spirit or the letter of the agreement. As Your Honor observed earlier, this deal was a great deal for him because he got a five-year cap. Having gotten that benefit, he now wants to argue that he got an additional benefit, which was that we would not provide additional information to the court. That would have been an absurd provision to agree to. First of all, it would have been unenforceable under Williamsburg. Second of all, the information was in an indictment. It's in the coverage paragraph. It was in the Guerra trial that Judge Towns herself presided over. She took the plea of Persico and we anticipated she would sentence him. Of course she would have known we believed he committed these crimes. Of course she would have known we believed we could prove it if we had to. I'll note that we stated numerous times to Judge Towns and Judge Irizarry that we did not want a FATICO hearing. That's throughout the record, Appendix 217 to Judge Towns. She ordered it anyway. We said it to Judge Irizarry when she inherited the case. We said it in court. And at that time, this is Appendix 261 to 262 and 270, we said not only do we not want a FATICO, but if the court holds a FATICO and we prevail, we will still stand up here and ask for a sentence in the range of 37 to 46 months. We then submitted a letter, a joint letter, when the defense changed its position and said they would only ask for a sentence in the guidelines range. We filed a letter, this is docket entry 835, telling Judge Irizarry in light of that change both sides are asking for a sentence in the same range. We don't think a FATICO hearing is necessary. She told us we were usurping her sentencing authority and ordered the hearing. There's really not much more we could have done to try not to prove the conduct to the court. We were never going to lie and say we couldn't prove it. If there are no other questions, I'll rely on our submissions. Thank you. Thank you. The whole government argument is a straw man. I'm going to home right in again on what the breach is here. The breach is the representation that we can prove the unconvicted murders, the worst crime of all, by a preponderance of the evidence. If they just pointed to the nothing, if they provided the probation department on request with all the underlying information, all the 3500 material they had, everything, perfectly allowed under the agreement. When you are dog whistling by telling the court I can prove it by preponderance evidence, you are inviting a FATICO hearing. Exactly what happened. Pages 19 through 20 of the report. I have to find out information about your client and with regard to those acts that the government alleges they can prove by a preponderance of the evidence, I have no idea what the proof is. I have no idea whether the government can prove it by a preponderance of the evidence. Page 20 of the reply brief, Judge Irizarry. My view is that the government as officers of the court, if they make a representation to probation, they can prove whatever facts are alleged in a pre-sentence report by the preponderance of the evidence. If there is no challenge to that by the defense, the court accepts that as true. If I have counsel that comes to me and says I know the government said they can prove it, I'm not believing it, then that's what a FATICO hearing is for. They could have withdrawn at any time the allegation that they could prove it by a preponderance of the evidence and say we rely on the indictment, we rely on the coverage provision, we rely on the witness's prior testimony at the other trial and left it at that. Nothing in the world prevented them from withdrawing that preponderance of allegation and not asking for a hearing. The difference between establishing probable cause and proof by a preponderance of the evidence. Exactly, Judge. What is the difference? You may not have proof beyond a reasonable doubt. Not at all. They're adding an extra increment of proof to get to 51% as opposed to probable cause, the lowest standard in the law. A probable cause is just that, probable. More probable than not. No, not more probable than not. Respectfully, Judge Wachtler, you could indict a ham sandwich. Much lower standard of proof and that's where the breach is right there. Getting that extra increment right there is the breach. That's where you're telling the judge, hey judge, we can do this, we can meet the 51% standard of proof at sentencing. And let me say this just then I'll close. This case has broader policy implications than Michael Persico. We have from the Supreme Court in Lafler and Fly that plea bargaining is not some adjunct of the criminal justice system. It is the heart of the criminal justice system. We have articles in the New York Times about crashing the system. If we cannot rely on the paper that these agreements are written on, the system will crash and that is in no one's benefit. Not this court, not district judges, not my friend's benefit and not our benefit. That's why these agreements are interpreted in our favor against the government as drafter to give us the benefit of any doubt to vindicate the due process concerns underlying ordinary contract principles that inform these agreements. Thank you. Thank you. Thank you both for your arguments. The court will reserve decision. As I said at the outset, the final case, United States of America v. Ventura Nieves is on submission. The clerk will adjourn court.